**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | |
| | ) | |
| v. | ) | Criminal Case No. CR-09-107-RAW |
| | ) | |
| MICHAEL RAY WRIGHT, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

## ORDER

A *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) ("motion") was filed by Defendant Michael Ray Wright ("Defendant") on March 18, 2024. [Doc. 45]. The court directed the Government to file a response. [Doc. 46]. The Government filed several motions for extension of time to respond to the motion, which were granted. [Docs. 47, 48, 49, 50, 51, 52, 53, and 54].

On July 15, 2024, Mr. Neil Van Dalsem, an Assistant Federal Public Defender, filed an unopposed motion for appointment of counsel. [Doc. 55]. Mr. Van Dalsem argued that the court should appoint counsel to represent Defendant for the limited purpose of requesting a sentence reduction under Amendment 821 to the Sentencing Guidelines. *Id.* Mr. Van Dalsem was appointed as counsel for Defendant for the limited purposes of representing Defendant as outlined in the motion. [Doc. 57].

On the same day that the unopposed motion for appointment of counsel was filed, the Government filed an objection to Defendant's compassionate release motion. [Doc. 56]. Defendant filed a *pro se* reply on July 29, 2024, and a *pro se* supplement on September 13, 2024. [Docs. 58 and 59]. On October 3, 2024, the court directed the Government to file a supplemental response regarding its position as to Defendant's potential eligibility for retroactive application of Amendment 821. [Doc. 60]. On October 15, 2024, the Government filed a supplemental response in opposition to any sentencing reduction pursuant to Amendment 821. [Doc. 61]. This matter is ripe for ruling.

A grand jury returned an indictment on December 9, 2009, charging Defendant with two counts of sexual exploitation of a minor child in violation of 18 U.S.C. § 2251(a). [Doc. 2]. Defendant pleaded guilty without a plea agreement to both counts. [Doc. 20]. A presentence report ("PSR") was prepared by the United States Probation Office. On June 23, 2010, Defendant was committed to the custody of the Bureau of Prisons for a term of 324 months on Count 1 and 324 months on Count 2. [Doc. 30]. The court ordered the sentences to run concurrently with each other, and concurrently with any sentence which may be imposed in the District Court of Cherokee County, Oklahoma, in case number CF-09-00005. *Id*. Judgment was entered on June 29, 2010. [Doc. 31]. Defendant did not file a direct appeal.

Defendant is an inmate at FCI Seagoville, a BOP facility in Texas. He is 52 years old and his projected release date is January 30, 2032.[1] Defendant seeks compassionate release. He expresses concern about the dangers of COVID-19. [Doc. 45; Doc. 59]. He suffers from a number of "physical and mental health issues," and attaches his medical records for the court's review. [Doc. 45 at 21; Doc. 45-1 at 20-52]. He argues that serving "15 long years as a sex offender in multiple federal prisons . . . is hard time," and that "many COVID-19 lockdowns has [sic] made it even harder time." [Doc. 45 at 21]. Defendant also contends that he is serving an unusually long sentence. *Id*. at 5, 10. Defendant is classified at a "low risk recidivism level" by the BOP. [Doc. 45-1 at 59]. He refers, in part, to his inmate work history, and his records show that he has completed education courses. *Id*. at 53, 58, 61, 64. Defendant earned his GED while incarcerated, and he has completed Anger Management and the Non-Residential Drug Abuse Program. *Id*. at 58-59, 61, 65, 75, and 77. Defendant's reentry plan shows that he has support from two of his siblings, and that he plans to get a Commercial Driver's License, if the court grants compassionate release. *Id*. at 79. Lastly, in the unopposed motion for appointment of counsel, Mr. Van Dalsem refers to General Order 23-14 and claims Defendant "qualifies for a reduced sentence under Amendment 821." [Doc. 55 at 1].

The First Step Act, effective December 21, 2018, amended 18 U.S.C. § 3582(c)(1)(A) to authorize a defendant to move the sentencing court for a sentence reduction for "extraordinary and

---

[1]    *See* BOP inmate locator, https://www.bop.gov/inmateloc/ (last visited September 3, 2025).

compelling reasons."[2]  *See* First Step Act of 2018, Pub. L. No. 115-391 § 603(b), 132 Stat. 5194, 5239 (2018).  In the case at hand, the Government does not contest that Defendant has exhausted his administrative remedies.  [Doc. 56 at 3].  The Government, however, argues that a reduction in sentence is not warranted.  First, with respect to Defendant's COVID-19 claims, the Government contends that "Section 3582(c)(1)(A) contemplates sentence reductions for specific individuals, not the widespread prophylactic release of inmates and the modification of lawfully imposed sentences to deal with a world-wide viral pandemic," and that "[t]he generalized claims of Defendant are not sufficient to warrant relief."  *Id*. at 5.  The Government also points to Defendant's medical records, contending that the "BOP has provided reasonable and responsive care for his medical conditions," and "[w]hen more needs have arisen, the facility has provided care to diagnose and treat those conditions."  *Id*. at 6.  The Government argues that Defendant's sentence is not unusually long under the new amendments.  *Id*. at 9.  In addition, the Government cites U.S.S.G. 1B1.13(a)(2), arguing that "this Court should deny a sentence reduction unless it determines 'the defendant is not a danger to the safety of any other person or to the community as provided in 18 U.S.C. § 3142(g).'"  *Id*. at 11.  The Government further asserts that the factors under 18 U.S.C. § 3553(a) "do not support Defendant's request for premature, permanent release."  *Id*.

Next, with respect to Defendant's eligibility for relief under Amendment 821, the Government acknowledges that "Defendant is eligible for a reduction in sentence."  [Doc. 61 at 6].  The Government urges the court, however, "to decline to apply Amendment 821 relief to this Defendant . . . or in the alternative, re-impose a sentence of 324 months which [is] within the amended range."  *Id*.  Referring to the second step of the inquiry set forth in *Dillon v. United States*, 560 U.S. 817 (2010), the Government notes that this court must "evaluate whether, and to what extent, a modification is warranted under the sentencing factors."  *Id*.  The Government argues as follows:

> The government's objection to relief here falls under step two of the inquiry. Applying the 18 U.S.C. § 3553(a) factors heavily weighs against lowering Defendant's sentence as sought by the motion.  A sentence must be "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18

---

[2]    Prior to the First Step Act, a motion for compassionate release could only be brought by the Director of the Bureau of Prisons.

U.S.C. § 3553(a)(2). The Court must consider several factors in determining the particular sentence to be imposed, including: (1) the nature and circumstance of the offense; (2) the history and characteristics of Defendant; (3) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; (4) the need to afford adequate deterrence to criminal conduct; (5) the need to protect the public from further crimes of Defendant; (6) the need to provide Defendant educational or vocational training, medical care, or other correctional treatment; (7) the need to avoid unwarranted disparities; and (8) the need to provide restitution to the victim. *Id.* For all the reasons set forth in the government's motion for upward variance, any reduction here is unwarranted. Reducing this Defendant's sentence will not reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter criminal conduct, or protect the public from further crimes of Defendant. Defendant sexually assaulted two minor victims. These are profound invasions that extend beyond mere privacy or property crimes. His actions were calculated and planned against two victims. His lengthy sentence was justified. Early release would endanger the public and risk the creation of more victims. His recent disciplinary record in prison prove he still has not learned to follow the rules. As referenced in the government's CARES response, "In the last three years, he has been disciplined for having possession of an SD card and giving or accepting money without authorization." (Doc. # 56 at 6; Doc. # 56-1 at p. 5).

[Doc. 61 at 5-6].

The court will first address Defendant's claim for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Section 3582(c)(1)(A) authorizes this court to modify a term of imprisonment, upon a motion filed by a defendant, after the defendant has complied with the statute's exhaustion requirement. A defendant satisfies the exhaustion requirement "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

It appears from the record that this court has authority to consider modification of Defendant's sentence. Defendant requested relief from his warden on January 22, 2024, and the motion was filed with the court on March 18, 2024. [Doc. 45-2 at 1]. The Government does not contest that Defendant has exhausted his administrative remedies. [Doc. 56 at 3]. Accordingly, Defendant is entitled to move this court for relief.

4

The Tenth Circuit Court of Appeals reviewed the history and text of 18 U.S.C. § 3582(c)(1)(A)(i) and provided the following guidance to courts considering compassionate-release motions:

> Under the plain language of the statute, a district court may thus grant a motion for reduction of sentence, whether filed by the Director of the BOP or a defendant, only if three requirements are met:  (1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in § 3553(a), to the extent that they are applicable.

*United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021); *see also United States v. Maumau*, 993 F.3d 821, 831 (10th Cir. 2021).  The Circuit further explained that "district courts may deny compassionate-release motions when any of the three prerequisites listed in § 3582(c)(1)(A) is lacking and do not need to address the others."  *McGee*, 992 F.3d at 1043 (quoting *United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021)); *see also United States v. Hald*, 8 F.4th 932, 942-43 (10th Cir. 2021) ("If the most convenient way for the district court to dispose of a motion for compassionate release is to reject it for failure to satisfy one of the steps, we see no benefit in requiring it to make the useless gesture of determining whether one of the other steps is satisfied.").

On November 1, 2023, the Sentencing Commission issued an applicable policy statement for compassionate-release motions filed directly by defendants with the courts.  U.S.S.G. § 1B1.13(b), Reduction In Term Of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) (Policy Statement).  Under the policy statement, the Sentencing Commission has determined that "extraordinary and compelling reasons exist" if a defendant establishes any of the following circumstances or a combination thereof:

(1) Medical Circumstances of the Defendant.--
    (A) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (B) The defendant is--
        (i) suffering from a serious physical or medical condition,
        (ii) suffering from a serious functional or cognitive impairment, or
        (iii) experiencing deteriorating physical or mental health because of the aging process,

5

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(C) The defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death.

(D) The defendant presents the following circumstances--

(i) the defendant is housed at a correctional facility affected or at imminent risk of being affected by (I) an ongoing outbreak of infectious disease, or (II) an ongoing public health emergency declared by the appropriate federal, state, or local authority;

(ii) due to personal health risk factors and custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease or the ongoing public health emergency described in clause (i); and

(iii) such risk cannot be adequately mitigated in a timely manner.

(2) Age of the Defendant.--The defendant (A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(3) Family Circumstances of the Defendant.--

(A) The death or incapacitation of the caregiver of the defendant's minor child or the defendant's child who is 18 years of age or older and incapable of self-care because of a mental or physical disability or a medical condition.

(B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(C) The incapacitation of the defendant's parent when the defendant would be the only available caregiver for the parent.

(D) The defendant establishes that circumstances similar to those listed in paragraphs (3)(A) through (3)(C) exist involving any other immediate family member or an individual whose relationship with the defendant is similar in kind to that of an immediate family member, when the defendant would be the only available caregiver for such family member or individual. For purposes of this provision, "immediate family member" refers to any of the individuals listed in paragraphs (3)(A) through (3)(C) as well as a grandchild, grandparent, or sibling of the defendant.

(4) Victim of Abuse.--The defendant, while in custody serving the term of imprisonment sought to be reduced, was a victim of:

(A) sexual abuse involving a "sexual act," as defined in 18 U.S.C. 2246(2) (including the conduct described in 18 U.S.C. 2246(2)(D) regardless of the age of the victim); or

(B) physical abuse resulting in "serious bodily injury," as defined in the Commentary to § 1B1.1 (Application Instructions);

6

that was committed by, or at the direction of, a correctional officer, an employee or contractor of the Bureau of Prisons, or any other individual who had custody or control over the defendant.

For purposes of this provision, the misconduct must be established by a conviction in a criminal case, a finding or admission of liability in a civil case, or a finding in an administrative proceeding, unless such proceedings are unduly delayed or the defendant is in imminent danger.

(5) Other Reasons.--The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4).

(6) Unusually Long Sentence.--If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

U.S.S.G. § 1B1.13(b)(1)–(6).

The court does not find extraordinary and compelling reasons justifying release in the case at hand. Defendant is 52 years old. He is classified at a "Care1" Care Level (healthy or simple chronic care). [Doc. 56-1 at 1]. The medical records show that he suffers from, among other conditions, cyclothymic disorder, allergic rhinitis, other and unspec. disc disorder in lumbar region, low back pain, lumbago, hyperlipidemia, bipolar disorder, adjustment disorder, intermittent explosive disorder, acute sinusitis, GERD without esophagitis, worsening achalasia, dizziness and giddiness, pain and headaches, syncope and collapse, prediabetes, dental issues, and urinary tract infection. [Doc. 45-1 at 20; Doc. 56-2 at 6-10]. Still, Defendant does not appear to be suffering from a terminal illness, or a serious physical or medical condition, or a serious functional or cognitive impairment, that substantially diminishes his ability to provide self-care. *See* U.S.S.G. § 1B1.13(b)(1). He does not allege that he is experiencing deteriorating physical or mental health because of the aging process. *Id*. Nor is the court persuaded that Defendant is suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which Defendant is at risk of serious deterioration in health or death. *Id*.

In short, Defendant's medical records show the BOP provides appropriate medical treatment for his health conditions. In 2023, for example, he was evaluated by a GI specialist. [Doc. 56-3 at 12-14]. Defendant also had an MRI to evaluate his headaches. *Id.* at 15. He receives medication for his conditions and the BOP has provided devices/equipment to Defendant (e.g., brace for his back, compression garment for leg, alternate institutional shoes, cane). [Doc. 56-2 at 2-4, 12-13]. The medical records further show that he recovered from COVID-19 in August of 2020, and that he was vaccinated for COVID-19 in 2024. *Id.* at 10-11. The court is not persuaded that FCI Seagoville is unequipped to provide appropriate medical treatment if Defendant were to become sick again from COVID-19. Nor is it clear that his care for any future COVID-related complications would be improved, or that the likelihood of exposure to the virus would be reduced, if he were outside the BOP system. Moreover, even assuming his medical conditions increase his risk of severe COVID-19, Defendant has not shown that an outbreak of infectious disease affects his correctional facility or that there is an ongoing public health emergency. U.S.S.G. § 1B1.13(b)(1)(D)(i). As recently noted by the Tenth Circuit, "no federal, state, or local authority has declared a public health emergency in relation to COVID-19 since May 11, 2023, when the federal public health emergency for COVID-19 ended." *United States v. Davis*, No. 24-3164, 2025 WL 1000344, at *4 (10th Cir. Apr. 3, 2025) (unpublished).

Defendant also argues that harsh prison conditions during the COVID-19 pandemic further warrant a sentence reduction. The court is not persuaded. Like other courts that have addressed similar arguments, this court is sympathetic to the conditions to which Defendant was subjected during the pandemic. But Defendant's argument does not establish an extraordinary and compelling reason for a sentence reduction. Last year, in *United States v. Hernandez*, Case No. 19-10002-02-EFM, 2024 WL 52287 (D. Kan. Jan. 4, 2024), Judge Melgren in the District Court of Kansas analyzed a similar argument and denied a § 3582 motion.[3] The Kansas court noted that, "[a]though the COVID-19 pandemic undoubtedly made prison conditions more difficult, the COVID-19 pandemic made conditions more difficult for everyone. And based on Defendant's argument, everyone who was incarcerated during the height of the COVID-19 pandemic should receive a sentence reduction because they experienced different or difficult prison conditions."

---

[3]    "[D]istrict court opinions have persuasive value only and are not binding as a matter of law." *United States v. Worthon,* 520 F.3d 1173, 1179–80 (10th Cir. 2008).

*Hernandez*, 2024 WL 52287, at *3. The Kansas court concluded, and the undersigned agrees, that "Defendant's asserted reason is not consistent with any of the reasons set forth in U.S.S.G. § 1B1.13(b)(1)-(4)" or the catchall provision in § 1B1.13(b)(5), and that "[o]perational difficulties at prisons during the COVID-19 pandemic [are] not similar in gravity to the extraordinary and compelling reasons set forth" in U.S.S.G. § 1B1.13(b). *Id*; *see also United States v. Cortez-Diaz*, Case No. 11-20031-01-JWL, 2024 WL 263187, at *3 (D. Kan. Jan. 23, 2024) ("Because defendant asserts only generalized harm applicable to every inmate, he has not shown an extraordinary and compelling basis for a sentence reduction.").

Defendant next contends that he is serving an unusually long sentence, and that his post-sentencing rehabilitation efforts, are extraordinary and compelling reasons justifying release. The court, again, is not persuaded. Defendant was sentenced to 324 months of imprisonment, which was within the applicable sentencing guideline range. He did not receive an unusually long sentence, and he has failed to show that a change in law produces a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed. U.S.S.G. § 1B1.13(b)(6). The court is also aware of Defendant's post-sentencing rehabilitation efforts. Defendant refers to his work history while incarcerated, and he is classified at a "low risk recidivism level" by the BOP. [Doc. 45-1 at 53, 59]. His BOP records show, in part, that he earned his GED in 2014, and completed most of his educational courses between 2014 and 2021. *Id*. at 58. In 2017, he completed the Non-Residential Drug Abuse Program and Anger Management. *Id*. at 59, 75, and 77. The Government, on the other hand, points out that "[i]n the last three years, [Defendant] has been disciplined for having possession of an SD card and giving or accepting money without authorization." [Doc. 56 at 6; Doc. 56-1 at 5]. The Government claims that his recent disciplinary record in prison shows "he still has not learned to follow the rules." [Doc. 61 at 5]. Be that as it may, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). Again, the court does not find extraordinary and compelling reasons warranting compassionate release under step one of the test adopted by the Tenth Circuit in *McGee*.

In addition, the court is convinced that Defendant's claim for compassionate release fails to satisfy step three of *McGee*. The applicable factors under 18 U.S.C. § 3553(a) do not support a

reduced sentence. The Government describes Defendant's crimes as "profound invasions that extend beyond mere privacy or property crimes." [Doc. 61 at 5]. The undersigned agrees.

Defendant was convicted of very serious crimes against two children. The offense conduct was described in great detail in the PSR. Photographs depicting two young girls in various sexually explicit poses were found under the liner in the bottom of Defendant's duffel bag. *PSR* at ¶ 6. The photographs were found by Defendant's girlfriend. *Id*. Defendant's girlfriend recognized the young girls in the photographs. *Id*. Both children were approximately nine years old when the photographs were taken. *Id*. Defendant's girlfriend also recognized Defendant's tattoos on his left hand in one of the photographs. *Id*. She feared reprisal from Defendant if she personally turned in the photographs, so she called her mother and sister to pick up the photos and take them to the police. *Id*. Police officers located Defendant and verified the presence of tattoos on his left hand. *Id*. at ¶ 7. He was taken to the police department for further questioning. *Id*. Defendant agreed to talk to officers and signed a waiver of *Miranda* rights. *Id*. Investigators went through each of the photos with Defendant, and Defendant described who the picture depicted and where the picture was taken. *Id*.

Defendant was committed to the custody of the Bureau of Prisons for a term of 324 months on Count 1 and 324 months on Count 2, and the court ordered the sentences to run concurrently with each other, and concurrently with any sentence which may be imposed in the District Court of Cherokee County, Oklahoma, in case number CF-09-00005. The 324-month sentence was justified. Defendant's projected release date is January 30, 2032. To release Defendant from prison at this time would diminish the seriousness of his crimes, would not promote respect for the law or afford adequate deterrence to criminal conduct, and would not serve the need of protecting the public from future crimes.

Lastly, the court appointed Mr. Van Dalsem to represent Defendant for the limited purpose of requesting a sentence reduction under Amendment 821 to the Sentencing Guidelines. [Doc. 55; Doc. 57]. The court agrees that Defendant is eligible for relief under Amendment 821. In summary, Defendant is eligible for two less criminal history points, which would establish a Criminal History Category of I, with an amended guideline imprisonment range of 262 to 327 months. Defendant's 324-month sentence *is still within the new guideline range*. Even so, the

10

§ 3553(a) factors strongly weigh against reducing his sentence under step two of the *Dillon* analysis.  The court declines to reduce Defendant's sentence under Amendment 821.

Defendant's *pro se* motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) [Doc. 45], as supplemented [Doc. 59], is DENIED.

It is so ordered this 5th day of September, 2025.

_____

THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA